IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALECIA HARRIS, *ex rel.,* W.H., a minor, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 08 C 5881 <br><br> Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

Alecia Harris ("Ms. Harris") appeals from an ALJ's decision denying her son W.H. ("Plaintiff") Supplemental Security Income (SSI) benefits. Because the ALJ's decision is supported by substantial evidence, the denial of benefits is affirmed.

**I.  Background**

Ms. Harris claims Plaintiff became totally disabled on January 1, 1999 because of emotional problems (R. 66). Plaintiff was born on November 15, 1990 and has a history of bipolar disorder, enuresis[1], encopresis[2], and obesity. The ALJ rendered a partially favorable decision finding that Plaintiff had been disabled from May 18, 2004 to January 1, 2007, but not thereafter (R. 17-26).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 18, 2004, the date the application for Supplemental Security Income was filed. The ALJ further found that Plaintiff's bipolar disorder, enuresis, encopresis, and obesity are severe

---

[1]  Enuresis is an involuntary discharge of urine. Medline Plus, http://www.nlm.nih.gov/medlineplus/mplusdictionary.html.

[2]  Encopresis is the involuntary passage of feces. Medline Plus, http://www.nlm.nih.gov/medlineplus/mplusdictionary.html.

impairments, but that they do not qualify as a listed impairment. The ALJ determined that from May 18, 2004 to January 1, 2007, Plaintiff had an impairment or combination of impairments that functionally equaled the listings. The ALJ concluded that beginning January 1, 2007, Plaintiff's impairments were no longer functionally equivalent to a listed impairment.

## II.     Discussion

Under the Social Security Act, a child is disabled if he has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner uses a three-step sequential evaluation process to determine whether a child meets this definition. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, he is not disabled. Id. Second, if the child does not have a medically severe impairment or combination of impairments, then his claim is denied. Id. Third, the child's impairment must meet or be medically or functionally equivalent to one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Id.

To determine whether an impairment is the functional equivalent of a listing, the ALJ analyzes its severity in six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a. A child's impairment functionally equals a listing and the child will be found disabled if the ALJ finds a "marked" difficulty in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. §

416.926a(e)(2)(i). An "extreme" limitation exists when a child's "impairment interferes very seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

Applying the above framework, the ALJ here concluded that Plaintiff had marked limitations in interacting and relating with others and marked limitations in caring for personal needs from May 18, 2004 to December 31, 2006, and therefore qualified for Supplemental Security Income during that time period. The ALJ determined that by January 1, 2007, Plaintiff's impairments were no longer functionally equal to a listed impairment. Plaintiff raises three main challenges to the ALJ's decision that Plaintiff was no longer disabled by January 1, 2007: (1) the ALJ improperly rejected the opinion of counselor Brian McLaughlin in violation of Social Security Ruling 06-03p; (2) the ALJ erred in failing to find that Plaintiff had "marked" difficulties in the domains of interacting with others and caring for himself; and (3) the ALJ erred in failing to make credibility findings for Plaintiff or his mother for the period after January 1, 2007. None of these arguments warrant reversal or remand.

### A. Social Security Ruling 06-03p

Plaintiff argues that the ALJ erred in rejecting the opinion of counselor Brian McLaughlin (McLaughlin) for the time period after December 31, 2006 without following the requirements of Social Security Ruling 06-03p. McLaughlin is a counselor who was providing mental health therapy to Plaintiff. Plaintiff contends that the ALJ should have used the criteria found in SSR 06-03p for assessing non-medical sources.

Social Security Ruling 06-03p clarifies how the Administration considers opinions from sources who are not "acceptable medical sources." The ruling recognizes that opinions from medical sources who are not technically deemed "acceptable medical sources" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p at *3. SSR 06-03p directs that the same factors that apply to evaluating medical opinions from "acceptable medical sources" can be applied to opinion evidence from "other sources." Id. at *4. Those factors include: (1) how long the source has known the claimant; (2) how frequently the source has seen the claimant; (3) how consistent the opinion is with the record as a whole; (4) the degree to which the source presents relevant evidence to support an opinion; (5) how well the source explains the opinion; (6) whether the source has a specialty or area of expertise related to the claimant's impairment(s); and (7) any other factors that tend to support or refute the opinion." Id. at *4-5.

McLaughlin reported on May 25, 2006 that he had been meeting with Plaintiff in weekly family sessions for 18 months and meeting individually with Plaintiff for 2 months. (R. 223). McLaughlin stated that Plaintiff had a diagnosis of bipolar disorder with psychotic symptoms. Id. McLaughlin noted that Plaintiff "exhibits a consistent and significant

depressed mood" and that he was "often socially isolated" and displayed "anti-social behavior like destruction of property and cursing others out." Id. McLaughlin further noted that Plaintiff has a history of auditory hallucinations which are controlled through medication. Id. McLaughlin opined that Plaintiff had marked impairments in three domains: interacting and relating to others, caring for himself, and acquiring and using information. (R. 224-26). McLaughlin also opined that Plaintiff had less than marked limitations in his ability to attend and complete tasks and no limitation in his ability to move about and manipulate objects and in his health and physical well-being. (R. 224-27).

The ALJ followed SSR 06-03p and committed no reversible error in his evaluation of McLaughlin's May 2006 opinion. The ALJ considered and generally credited McLaughlin's opinion by finding Plaintiff disabled during the same time period as McLaughlin's May 2006 opinion. In his decision, the ALJ noted that McLaughlin's May 2006 opinion was consistent with the ALJ's determination that Plaintiff was in fact disabled during the May 18, 2004 to December 31, 2006 time period. (R. 25). The ALJ found that, for that time period, Plaintiff had a "marked" impairments in the two domains of interacting and relating to others and in caring for personal needs. (R. 20-21). The only inconsistency between McLaughlin's opinion and the ALJ's finding concerns whether Plaintiff had a "marked" limitation in the domain of acquiring and using information. As the government argues, this discrepancy does not matter because a finding of disability requires "marked" limitations in only two domains. The ALJ was not required to explain the difference between his finding and McLaughlin's opinion in the domain of acquiring and using information because either way Plaintiff would have been found disabled.

McLaughlin's opinion can and was considered as evidence from an "other source" under SSR 06-03p, but McLaughlin's assessment does not offer an opinion about Plaintiff's condition during the period after December 31, 2006. McLaughlin also did not indicate when Plaintiff's marked limitations in the three domains began or how long they would likely last. McLaughlin's opinion is limited to a period when Plaintiff was not compliant with his medications, and there is no continuing basis in the record for McLaughlin's opinion of disability after Plaintiff became regularly medication compliant. Plaintiff points to no treatment records from McLaughlin or any other provider after December 31, 2006 supporting the limitations contained in McLaughlin's May 2006 opinion. The ALJ considered McLaughlin's opinion and gave it significant weight for the period prior to December 31, 2006. SSR 06-03p requires nothing more.

Moreover, substantial evidence supports the ALJ's finding that Plaintiff's condition significantly improved as of January 1, 2007. The ALJ's assessment of the severity of Plaintiff's impairments and the limitations they imposed for the period after December 31, 2006 was consistent with the alternative high school record and the testimony from Plaintiff and his mother at the second hearing, which reflected significant improvement when medication compliant. At the second hearing, Ms. Harris testified that Plaintiff had been medication compliant since the end of December 2006. (R. 338, 340). She stated that Plaintiff's medication compliance had improved his grades and personal hygiene. Id. at 338. The record shows that Plaintiff began attending an alternative high school in February 2007 and his grades improved. (R. 261). Plaintiff testified at the supplemental hearing that he noticed a difference when he is on medication. (R. 341). Plaintiff noted that his medication helps him get along better with others. Id. Ellen Rozenfeld, a licensed clinical

psychologist, also testified at the second hearing. Dr. Rozenfeld opined that when Plaintiff became medication compliant at the end of December 2006, his limitations in the domains of interacting or relating to others and in caring for personal needs were less than marked. (R. 345-51).

Plaintiff makes much of the fact that McLaughlin's opinion was consistent with other doctor's opinions in the record regarding Plaintiff's abilities to interact and relate to others and care for himself. Doc. #18 at 9. Plaintiff ignores the fact that none of these doctors offered any opinion regarding Plaintiff's limitations in these domains during the time period after December 31, 2006 when Plaintiff was regularly medication compliant. (R. 164-65, 186-88, 212-14, 218, 252-53, and 317-19). Moreover, as Dr. Rozenfeld indicated, the record as whole indicates that when Plaintiff was compliant with his medication, "there was improvement of function." (R. 351). For example, as early as August 6, 2004, Plaintiff's mother reported to Dr. Russell that she felt the medication was helpful to Plaintiff. (R. 187). On October 6, 2004, Plaintiff's eighth grade teacher stated that Plaintiff was a "normal functioning, age-appropriate boy when he is on meds." (R. 200). Dr. Allan D. Nelson stated on January 28, 2005 that Plaintiff's "behavioral problems have improved significantly since taking his current medications . . . ." (R. 214). Dr. Nelson further noted that Plaintiff's grades "have increased from failing to mostly A's since he has been on his medications." Id. Dr. David Brister, a state agency consultant, opined on March 1, 2005 that on medication and treatment, Plaintiff is "well controlled." (R. 218; 221.). Finally, the history section of Dr. Feldman's January 28, 2005 Psychiatric Evaluation confirms the improvement in Plaintiff's condition when he is medication compliant:

> Last month, his mother said that he was out of control, even with his medications. However, it turned out that actually he was not taking his medications. When he did get back on them he became more stable and his grades improved dramatically and he is less oppositional. There have been fewer flare ups at home between him and his mother. He says that his mood has been quite good lately. He is not "cussing" at mom as much. He is not racing as he was before . . . . He did have some auditory hallucinations. He said that when he was off his medication they returned and they "left his head" when he was back on the Abilify.

(R. 252).

Plaintiff argues that it was improper for the ALJ to "assume that a child who struggled with bipolar disorder and impulse control disorder at one point would not suffer from the same disorders a few months later." Doc. #25 at 4. Plaintiff's argument has no merit. The ALJ found that Plaintiff has "less than marked" limitations in the six domains by January 1, 2007 (R. 21). A finding of "less than marked" is not the equivalent of "no limitation" in the relevant domains. A less than marked limitation means that Plaintiff's impairments less than seriously interfere with his ability to independently initiate, sustain, or complete activities in the domains. The ALJ did not find that Plaintiff's improvement with a medication regime meant that his impairments no longer existed or no longer interfered with his abilities in the six domains.

**B. Domains of Interacting with Others and Caring for Himself**

Plaintiff next argues that the ALJ erred in finding his limitations in the domains of interacting and relating with others and caring for himself to be less than "marked" by January 1, 2007. The domain of interacting and relating to others "refers to how well the child initiates and sustains emotional connections with others, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." Hopgood v. Astrue, 2009 WL 2591354, at *5 (7th Cir. Aug. 25, 2009) (citing 20

C.F.R. § 416.926a(i)). "An adolescent should be able to initiate and develop friendships with same-aged children, relate appropriately to other children and adults, and begin to be able to solve conflicts between himself and peers or family members or other adults." Id. "The child should be able to express his feelings and follow social rules for interaction and conversation." Id.

The domain of caring for oneself refers to how well a child maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways; how he copes with stress and changes in his environment; and whether he takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). Adolescents between the ages of 12 and 18 should feel more independent from others and should be increasingly independent in all of their day-to-day activities. 20 C.F.R. § 416.926a(k)(2)(v). They should begin to discover appropriate ways to express their feelings, both good and bad. Id. They should also begin to think seriously about their future plans, and what they will do when they finish school. Id.

Substantial evidence supports the ALJ's finding that Plaintiff had less than marked limitations in the domain of interacting and relating to others by January 1, 2007. Plaintiff argues that the ALJ erred in finding he had less than marked limitations in this domain by January 1, 2007 because testimony at the first hearing showed that Plaintiff had cursed out his teachers, gotten into fights, attempted to kill his step-father, threw tantrums, hit his two-year old niece, had trouble getting along with his brother and sister, and attacked and killed cats. Plaintiff's testimony occurred in November 2006, which was during the time period the ALJ found him disabled. Plaintiff's testimony referred to past events and the ALJ accepted this testimony as credible. (R. 25). The ALJ found Plaintiff disabled during the

period covering all of these events. Plaintiff has not cited any evidence from the time period after January 1, 2007 showing that he was markedly impaired in the domain of interacting and relating to others. In fact, the record shows that starting in January 2007, Plaintiff's grades improved and he reported getting along better with others. (R. 338, 341). Plaintiff's mother reported that after January 1, 2007 when he began taking his medication on a regular basis, Plaintiff's verbal abuse of teachers and his physical confrontations with other students completely stopped. (R. 344-45). Dr. Rozenfeld opined that Plaintiff demonstrated improvement in the domain of interacting and relating to others when consistently on medication such that he had less than a "marked" limitation in this domain starting in January 2007. (R. 348).

The ALJ's finding that Plaintiff's limitations in the domain of caring for onself are less than marked by January 1, 2007 is also supported by substantial evidence. Plaintiff points out that during the period after January 1, 2007, he was not independently caring for himself, he had 6 school absences in a two month period, and he still struggled with encopresis. Plaintiff fails to mention the testimony by Plaintiff and his mother showing significant improvement in his ability to care for himself by January 1, 2007. When Plaintiff was asked at the second hearing in April 2007 if he still had trouble controlling his bowels, he responded, "No, not if I'm on the medication." (R. 331). Plaintiff stated that he no longer had to be reminded to go to the bathroom. Id. When asked about Plaintiff's history of soiling himself at school, Ms. Harris stated that "it's a lot better with the medication." (R. 332). Ms. Harris added that he had not soiled himself at his new school since he started in February 2007. (R. 334). Ms. Harris testified that Plaintiff had been taking his medication on a regular basis, which resulted in improved grades and hygiene. (R. 338).

She stated the medication "helped out a lot." Id. Ms. Harris explained that Plaintiff had only missed a "handful" of days of school when on his medication regime as compared to his prior condition where he missed several days out of a week. (R. 339).

Plaintiff also does not address Dr. Rozenfeld's opinion regarding the domain of caring for oneself. Dr. Rozenfeld testified that beginning in January 2007 when Plaintiff became medication compliant and then changed schools, his grades and attendance improved and there was an improvement in the encopresis problem. (R. 348-49). Dr. Rozenfeld opined that Plaintiff demonstrated improvement in the domain of caring for himself when on medication such that he had less than a "marked" limitation in this domain starting in January 2007. (R. 348). There was no medical evidence conflicting with Dr. Rozenfeld's opinion. Dr. Rozenfeld was the only medical source to offer an opinion regarding the time period after December 31, 2006. Dr. Rozenfeld's opinion was consistent with substantial evidence in the record (i.e., the testimony of Plaintiff and his mother, the Alternative High School Midterm Progress Report, and the record as whole indicating improvement of function when Plaintiff was medication compliant). There was nothing in the medical record for the ALJ to deviate from Dr. Rozenfeld's assessment and make his own determination as to the severity of Plaintiff's impairment in this domain.

Plaintiff next asserts that the ALJ did not discuss his impairments in conjunction with the domains for the period following January 1, 2007. Plaintiff argues that the ALJ's reference to Plaintiff's "improvement in all of his symptoms" was too conclusory. Plaintiff says the ALJ should have included a more thorough discussion of the state of Plaintiff's impairments during the period of disability and the current state of those impairments with reference to the six functional domains.

Although the ALJ could have better tied his discussion of the evidence to each of the six domains, a remand is unnecessary on this issue. The question is whether the ALJ provided an "accurate and logical bridge" from the evidence to his conclusion that the claimant is not disabled. Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008). ALJ Asbille carefully reviewed the totality of the evidence of Plaintiff's impairments and adequately articulated the basis for his determination that Plaintiff had marked limitations in the areas of interacting and relating to others and caring for personal needs during the period from May 18, 2004 to December 31, 2006 and less than marked limitations in these two domains by January 1, 2007. Contrary to Plaintiff's suggestion, the ALJ did not only reference Plaintiff's "improvement in all of his symptoms" with regard to the period after January 1, 2007. The ALJ's discussion was more specific and related Plaintiff's improvement to the two relevant domains. In particular, the ALJ found that by January 1, 2007, Plaintiff was taking his medications as prescribed, his grades were improving, and the enuresis and encopresis were under better control with fewer episodes. (R. 25). The ALJ relied on Dr. Rozenfeld's opinion, which in turn relied on the testimony of Plaintiff and his mother. Id. The ALJ stated:

> Dr. Rozenfeld, Ph.D., the medical expert at the second hearing, testified that the evidence showed that when claimant took his medications, he showed significant improvement. In fact in evaluating the area of self care Dr. Rozenfeld used the fact that claimant had problems with taking his medication as support for a marked rating. However, based on his testimony and the mother's testimony as well he is now cooperating with his medication regimen. That has caused improvement in all of his symptoms including better socialization, better grades, decreased encopresis, decreased enuresis, and generally more responsible behavior. Now that claimant is going to the Alternative School he is receiving significantly better grades and making definite progress. Dr. Rozenfeld opined that claimant now has improved to where he has less than marked impairments in interacting and relating to others and in self care.

Id.  The ALJ's explanation of why Plaintiff had less-than-marked limitations in the domains of interacting and relating to others and caring for personal needs after December 31, 2006 was sufficient to permit meaningful review and thus, met the minimal level of articulation required.

The cases cited by Plaintiff are distinguishable.  The ALJ here did not fail to explain "why strong evidence favorable to the plaintiff is overcome by the evidence on which [the] ALJ relies" (see Giles v. Astrue, 483 F.3d 483, 488 (7th Cir. 2007)), did not fail to "clearly identify which impairments were considered" (see Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003)), and did not fail to "consider crucial pieces of evidence" and to "minimally articulate the bases for his conclusions" (see Scott v. Barnhart, 297 F.3d 589, 594 (7th Cir. 2002)).

### C. Credibility

Finally, Plaintiff faults the ALJ for failing to make a credibility determination for Plaintiff and his mother for the period after December 31, 2006.  Social Security Ruling 96-7p requires ALJs to articulate reasons behind credibility evaluations:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

Plaintiff's challenge does not require a remand.  It is clear that the ALJ accepted Plaintiff's testimony and his mother's testimony at the second hearing as fully credible but

found the severity of his condition after December 31, 2006 not disabling. The reasons supplied by the ALJ support his credibility determination and the Court can adequately trace the path of his reasoning. The ALJ properly considered the testimony of the lay witnesses at the second hearing:

> At the [second] hearing, the claimant testified that he is on medications now and no longer has to be reminded to go to the bathroom. He became compliant with taking his medications because they help him with his problems. The claimant's mother, Alecia Harris, testified that there has been improvement in her son's hygiene. He now gets up and goes to the bathroom. Even if he does have an accident, he will now clean up after himself. Although she had to battle with him before to take his medications, he is now compliant with taking them. He would not take them because he said they made him too sleepy. He has only missed a handful of school day[s] rather than several as before.

(R. 21). The ALJ accepted Plaintiff's testimony and his mother's testimony by finding that "based on his testimony and the mother's testimony as well he is now cooperating with this medication regime." (R. 25). In finding Plaintiff's and his mother's testimonies at the second hearing credible but failing to rise to the level of disability, the ALJ relied on the opinion of Dr. Rozenfeld. As the ALJ noted in his decision, Dr. Rozenfeld testified that the "evidence showed that when claimant took his medications, he showed significant improvement." (R. 25). Dr. Rozenfeld opined that "claimant now has improved to where he has less than marked impairments in interacting and relating to others and in self care." Id. Accepting Plaintiff's and his mother's testimonies, as the ALJ did, substantial evidence supports the ALJ's decision to deny benefits.

Plaintiff complains that at the second hearing, his mother was "only asked to respond to the ALJ's inquiries regarding specific areas of improvement" and that her testimony was "limited to the questions the ALJ asked her." Doc. #25 at 6. Plaintiff was

entitled to a "full and fair record," Howell v. Sullivan, 950 F.2d 343, 348 (7th Cir. 1991), but a claimant represented by counsel, as Plaintiff was, is presumed to have made his best case before the ALJ. Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007). A full and fair record was developed in this case. Plaintiff's counsel was given a full opportunity to question the witnesses at the second hearing. After questioning Dr. Rozenfeld, Plaintiff's counsel stated, "That's all the questions I have." (R. 351). The ALJ then asked Plaintiff's counsel, "Anything else?" Id. Plaintiff's counsel responded, "No, that's all." Id.

### III. Conclusion

For these reasons, the ALJ's decision is affirmed. Plaintiff's Motion for Summary Judgment in Support of His Complaint [#17] is denied, and Defendant's Motion for Summary Judgment [#23] is granted. The Clerk is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Alecia Harris ex. rel. W.H., a minor.

**E N T E R :**

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: September 21, 2009**